## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MALCOLM JAMES SIMON<br>    LA. DOC # 532876 | CIVIL ACTION NO. 6:13-cv-0784 |
| VS. | SECTION P |
| | JUDGE DOHERTY |
| NATHAN CAIN, WARDEN | MAGISTRATE JUDGE  HILL |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Malcolm James Simon filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on April 12, 2013.  Petitioner is an inmate in the custody of the  Louisiana Department of Public Safety and Corrections.  He is incarcerated at the Avoyelles Correctional Center in Cottonport, Louisiana.  Petitioner attacks his 2008 manslaughter conviction entered by the Fifteenth Judicial District Court for Lafayette Parish, for which he was sentenced to thirty years imprisonment.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons, it is recommended that this *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

## STATEMENT OF THE CASE

The Lafayette Parish Grand Jury indicted petitioner on the charge of second degree murder for the September 22, 2007 shooting of Michael Onezine.  On September 9, 2008, petitioner was found guilty of the responsive verdict of manslaughter.  On December 16, 2008, petitioner was sentenced to serve thirty (30) years imprisonment.

Court-appointed appellate counsel directly appealed petitioner's conviction and sentence to the Louisiana Third Circuit Court of Appeal arguing four assignments of error: (1) insufficiency of the evidence; (2) trial court erred in denying a motion for mistrial when the State attempted to introduce evidence of petitioner's prior bad acts; (3) the trial court erred in denying a motion for mistrial based upon the prosecutor's failure to timely provide transcripts of the interviews of witness; and (4) excessiveness of sentence. Petitioner filed a *pro se* supplemental brief on direct appeal arguing four additional assignments of error: (1) trial court erred when it denied petitioner's motion to suppress his confession; (2) insufficiency of the evidence; (3) prejudicial admission of circumstantial evidence (a spent and unspent cartridge and picture of a mailbox where the spent cartridge was found); and (4) trial court failed to articulate a factual basis to support the sentence imposed.  On December 9, 2009, the Louisiana Third Circuit Court of Appeal affirmed petitioner's conviction and sentence in an unpublished opinion.  *State of Louisiana v. Malcolm James Simon*, 2009 WL 4653743, 25 So.2d 255 (La. App. 3 Cir. 12/9/2009) (Table) [rec. doc. 22-1, pg. 1-31].

On December 30, 2009, petitioner sought a writ of *certiorari* in the Louisiana Supreme Court.  He asserted the following claims for relief: (1) trial court erred in denying petitioner's motion to suppress his confession; (2) insufficiency of the evidence; (3) prejudicial admission of circumstantial evidence (a spent and unspent cartridge and picture of a mailbox where the spent cartridge was found); (4) trial court erred in denying

2

a motion for mistrial based on the prosecutor's failure to timely provide transcripts of witness interviews; (5) trial court erred in denying a motion for mistrial when the State attempted to introduce evidence of prior bad acts; and (6) excessiveness of sentence.  On September 3, 2010, the Louisiana Supreme Court denied writs without comment. *State of Louisiana v. Malcolm James Simon*, 44 So.3d 696 (La. 9/3/2010).

On January 25, 2011, petitioner filed a *pro se* application for post-conviction relief in the District Court.  Petitioner raised three claims for relief: (1) the prosecutor violated petitioner's due process rights by untimely disclosing interviews of new witnesses; (2) the prosecutor allowed perjured testimony to go uncorrected; and, (3) ineffective assistance of trial counsel including claims that counsel was ineffective because counsel (a) failed to introduce a police report for the victim's prior attempted murder of petitioner, (b) failed to tell petitioner that his co-defendant had made a statement against him, (c) failed to interview witnesses, (d) failed to obtain an expert to testify about petitioner's state of mind given the victim's prior attempt on his life, (e) failed to properly file a Motion for Speedy Trial, and (f) failed to object to jury charges. [rec. doc. 22-4, pg. 5-31].

On June 27, 2011, the District Judge, noting the State's objections to the application "on the grounds that the issues raised are repetitive, because they were addressed by the court of appeal, or they would have been addressed but for petitioner's inexcusable failure to pursue them on appeal. . . " denied relief pursuant to La. C.Cr.P. art. 930.4(A) and (C). [rec. doc. 1-14, pg. 3].

3

On July 26, 2011, petitioner sought review in the Third Circuit Court of Appeal.

On June 26, 2012 the Third Circuit denied writs as follows:

> "There was no error in the trial court's ruling as to Relator's Claim One. The issue was fully litigated on appeal. La.Code Crim.P. art. 930.4(A). As for Claim Two, Relator failed to meet his burden of proof. La.Code Crim.P. art. 930.2. Finally, in claim Three, Relator asserted ineffective assistance of counsel. However, he offered no proof in support of his claim and failed to prove that, even if counsel's performance was deficient, he was prejudiced by the deficiency. He failed to demonstrate that there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052 (1984); *State v. Fuller*, 454 So.2d 119 (La. 1984)"

*State of Louisiana v. Malcolm James Simon*, No. KH 11-00934 (La. App. 3rd Cir. 2012)

(unpublished). [Doc. 1-12, pg. 3].

On July 26, 2007, petitioner applied to the Louisiana Supreme Court for writs. Petitioner directed the Louisiana Supreme Court to refer to attached exhibits, namely the application for post-conviction relief filed in the District Court, the writ application filed in the Third Circuit, and the judgments of both courts.  He argued that the trial court erred in ruling that petitioner's application for post-conviction relief was repetitive, and that the trial court erred in denying petitioner an evidentiary hearing. [rec. doc. 22-3, pg. 1-10].

On September 16, 2012, the Louisiana Supreme Court denied writs without comment. *State of Louisiana ex rel. Malcolm James Simon v. State of Louisiana*, 102 So.3d 34 (La. 11/16/2102).

Petitioner filed the instant petition on April 12, 2013.  Petitioner presents seven claims for relief, three of which petitioner alleges were raised in his post-conviction

4

application and four of which petitioner alleges were argued on direct appeal:  (1) late disclosure of witness interviews violated petitioner's Constitutional rights; (2) State allowed perjured testimony to go uncorrected; and (3) ineffective assistance of trial counsel because counsel (a) failed to introduce a police report for the victim's prior attempted murder of petitioner, (b) failed to tell petitioner that his co-defendant had made a statement against him, (c) failed to interview witnesses, (d) failed to obtain an expert to testify about petitioner's state of mind given the victim's prior attempt on his life, (e) failed to properly file a Motion for Speedy Trial, and (f) failed to object to jury charges; (4) insufficiency of evidence; (5) trial court erred in denying petitioner's motion to suppress evidence of his confession; (6) trial court erred in denying a motion for mistrial when the State attempted to introduce evidence of prior bad acts; and (7 ) excessiveness of sentence.

Noting that it appeared that petitioner had not properly exhausted available state court remedies, and thereby technically defaulted on those claims allegedly raised on post-conviction proceedings (Claims (1) through (3) herein because petitioner did not identify and argue each claim in his writ application to the Louisiana Supreme Court rather than merely referring to briefs filed in the lower courts), and that Claim 1 might be procedurally barred because both the trial court and Louisiana Third Circuit Court of Appeal found the claim barred by application of La. Code Crim.P. art. 930.4(A), the undersigned instructed the State to address these issues in its Response to the Petition.[1]

---

[1]The Court declined to act *sua sponte*.

Petitioner was also provided an opportunity after the State's responsive pleadings to file a Reply.  [rec. doc. 8].

The State has filed an Answer and Memorandum in Opposition to Habeas Corpus Relief [rec. docs. 16 and 17] and, thereafter, the State court record was filed into this record. [rec. docs. 20, 21 and 22].  Petitioner then filed a Reply. [rec. doc. 25].  This Report and Recommendation follows.

## LAW AND ANALYSIS

### I.  Procedural Default

The State argues that petitioner's claims were not properly exhausted in the Louisiana state courts.  Given the above procedural history and the undersigned's review of the entire state court record, with respect to petitioner's First, Second and Third claims, the State's position is well taken.[2]

---

[2] The undersigned was also concerned that petitioner's First claim was traditionally procedurally defaulted.  The claim was denied by the Third Circuit in post-conviction proceedings on the basis of  La. Code Crim.P. art. 930.4(A).  Under Louisiana law, Article 930.4(A) precludes post-conviction review of claims already "fully litigated" on direct appeal. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994). The presumption in the rule is that the claims were not new or different from something previously litigated and resolved on appeal. *Id.* at 1583. However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." *Id.*  For this reason, assuming the claim is not new or different, the bar does not preclude *habeas* review of the claim. This Court would simply "look-through" the ruling on collateral review and consider only the direct appeal proceeding. *Id.* at 1582–83.

The record demonstrates that petitioner presented the same facts in support of both claims and argued that he was entitled to a new trial.  The underlying legal basis for the claims, however, was different.  On direct appeal, the claim was presented as an erroneous denial of a mistrial, purportedly under Louisiana law; in post-conviction proceedings, the claim was recast as a Due Process violation, the same claim presented to this Court.  Under the circumstances, the undersigned would find that *habeas* review of the claim should not be precluded by the traditional procedural default doctrine.  If the claim presented in post-conviction proceedings was not new or the same, the Court would merely "look-through" the ruling on collateral review and consider the decision on direct appeal.  On the other hand, if the claim was new or different, the traditional procedural default doctrine would be inapplicable.

It is well settled that a petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies.  28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir. 1983); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Whitehead v. Johnson*, 157 F.3d 384,387 (5th Cir. 1998).  In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of each of his claims to the state courts in a procedurally proper manner. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).  Moreover, each claim must be presented to the state's highest court, even when review by that court is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999);  *Magouirk v.  Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) *citing Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).  In Louisiana, the highest court is the Louisiana Supreme Court.

The scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either

instance, the petitioner is deemed to have forfeited his federal *habeas* claim. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir. 1999) *citing Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Petitioner did not argue each claim for relief in his writ application to the Louisiana Supreme Court.  Instead, petitioner apparently attempted to adopt and incorporate the arguments contained in his briefs presented to the lower courts, and argued that his post-conviction claims were not repetitive, and that his application should not have been denied without an evidentiary hearing.  However, the United States Supreme Court has held that "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material . . . that does so." *Baldwin v. Reese*, 541 U.S. 27, 29–32, 124 S.Ct. 1347, 1351 (2004); *Thomas v. Cain*, 2006 WL 2990083, *16-17 (W.D. La. 2006)*.

Moreover, vague or fleeting references tacked on to the end of another argument in a state court brief does not sufficiently afford the state court the opportunity to address an alleged violation of federal rights and, hence, does not constitute a "fair presentation" for exhaustion purposes. *Thomas,* 2006 WL 2990083 at *17 *citing Wilder*, 274 F.3d at 260. Petitioner did not argue the merits of his post-conviction claims before the Louisiana Supreme Court in his writ application.  Thus, the Louisiana Supreme Court was denied a

fair opportunity to consider the merits of petitioner's First, Second and Third claims and these claims therefore remain unexhausted.

Because the state court to which petitioner would be required to return to meet the exhaustion requirement would now find the claims untimely[3], those claims are "technically" procedurally defaulted. *Thomas,* 2006 WL 2990083 at *17 *citing Wilder*, 274 F.3d at 262 *citing Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001), *Magouirk*, 44 F.3d at 357 *citing Coleman*, 501 U.S. at 731–33, and 735 at fn. 1, 111 S.Ct. at 2546, *Bledsue v. Johnson*, 188 F.3d 250, 254–55 (5th Cir. 1999) *citing Coleman*, 501 U.S. at 735 n. 1 and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999), *Sones*, 61 F.3d at 416 and *Fuller v. Johnson*, 158 F .3d 903, 905–06 (5th Cir. 1998).  This court may therefore refuse to review the merits of these claims unless petitioner demonstrates that he should be excused from application of the procedural default doctrine. This he can do by showing cause[4] and prejudice for the default or by showing that a miscarriage of justice[5]

---

[3] *See* Louisiana Supreme Court Rule X, § 5(a) providing thirty days from the mailing of the appellate court judgment to seek review in the Louisiana Supreme Court.

[4] In *Murray v. Carrier*, the Supreme Court explained that "cause" requires an impediment external to the defense:
> "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard."

*Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted).

[5] In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional

will result from the denial of federal *habeas* review. *See Finley*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565*; McCleskey v. Zant*, 499 U.S. 467, 493-495, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 418; *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 107-108 (5th Cir. 1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir. 1996) *quoting McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

By Order requiring the State to respond to the instant petition and the State's response thereto, petitioner was placed on notice that the procedural default doctrine might be applicable to his claims.  Accordingly, by Reply, petitioner was given an opportunity to present valid reasons why his claims are not subject to the procedural default doctrine. [rec. doc. 8].

By Reply, petitioner has failed to present any valid argument as to why his claims are not barred by the procedural default doctrine. Petitioner argues that his claims are federal in nature by virtue of his having cited federal jurisprudence. That is not the issue. Rather, the Court has found that the claims were not properly presented to the Louisiana Supreme Court in a manner which sufficiently afforded the Court the opportunity to

---

violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that, as a factual matter, he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998); *Ward*, 53 F.3d at 108.  Thus, the petitioner must make a "colorable showing of factual innocence." *Callins*, 89 F.3d at 213 *quoting McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

address the alleged violations of federal rights.  Under *Baldwin*, the Louisiana Supreme Court is not required to read beyond petitioner's writ application to determine whether to decide petitioner's federal claims in the first instance.

Because petitioner has failed to demonstrate cause for his default, this Court will not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).  Further, petitioner has failed to demonstrate that, as a factual matter, he is actually innocent of the crime of which he was convicted.  Thus, he will not suffer a fundamental miscarriage of justice from this Court's failure to consider his claims.  Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

Based on the above, the undersigned finds that petitioner's First, Second and Third claims for relief, namely, that late disclosure of witness interviews violated petitioner's Constitutional rights, that the State allowed perjured testimony to go uncorrected and that petitioner received ineffective assistance of trial counsel, are technically procedurally defaulted.  Therefore, this Court is precluded from reviewing the merits of these claims.

## II. Merits Review

In light of the above, the only claims which are properly before this Court for review on the merits are the following: insufficiency of evidence (claim 4); trial court error in denying petitioner's motion to suppress his confession (claim 5); trial court error in denying a mistrial when the State attempted to introduce evidence of prior bad acts (claim 6) and excessiveness of sentence (claim 7).  These claims are addressed below.

*Standard of Review*

This *habeas* petition was filed on April 12, 2013; therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA).  *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[6]  AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments.  *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[7] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

**(1)** resulted in a decision that was contrary to, or involved an

---

[6]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya ,* 226 F.3d at 403-04 *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

[7]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the Court with respect to other aspects of the opinion which have no bearing on the issues herein.  Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this Court must give

deference to a state court decision for "any claim that was adjudicated on the merits in

State court proceedings" unless the decision was either "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or the decision "was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to

relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*,

456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  Under § 2254(d), as

amended, "[t]he federal courts no longer have a roving commission to discern and

'correct' error in state court proceedings, but must exercise a more limited review . . . ."

*Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not

grant the writ merely on a finding of error by a state court or on a finding of mere

disagreement with the state court.  *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court

arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question

of law or if the state court decides a case differently than . . . [the Supreme Court] has on

a  set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523;  *Montoya,* 226 F.3d at 403-04 *citing Williams*, 120 S.Ct. at 1523.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Dowthitt,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523.  The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22.  A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741.  Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  *Id.*  Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding.  *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d at 476 *citing Chambers v.*

*Johnson,* 218 F.3d 360, 363 (5th Cir. 2000).

In sum, "[a] state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011). Thus, under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786.

**Claim 4 – Sufficiency of the Evidence**

Petitioner argues that there was insufficient evidence to support his conviction for manslaughter because the State failed to show that petitioner had not acted in self-defense. Petitioner contends that the evidence established that he acted in self defense when he shot the victim and that the contrary testimony of eyewitnesses presented by the State, relied on by the Third Circuit on direct appeal, failed to rebut this theory. The State responds that this claim is without merit because it presented sufficient evidence from which a rational fact-finder could have found that petitioner committed the indicted offense of second degree murder, notwithstanding the jury's exercise of its right to render a "compromise" verdict to the legislatively authorized responsive verdict of manslaughter.

Under Louisiana law, manslaughter is a legislatively authorized responsive verdict to a charge of second degree murder.  La.C.Cr.P. art. 814(A)(3).   When a defendant does not object to a trial court's instruction on a legislatively authorized responsive verdict on the basis that the evidence does not support that responsive verdict, a defendant may not complain if jurors return such a verdict, whether or not that verdict is supported by the evidence.[8]   The evidence must, however, be sufficient to sustain a conviction on the

---

[8]The Louisiana Supreme Court's justification for the *Elaire* contemporaneous objection rule and admonition to defense counsel is that "[i]t would be unfair to permit the defendant to have the advantage of the possibility that a lesser 'compromise' verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence didn't support the responsive verdict to which he failed to object."  *Elaire*, 424 So.2d at 251-252.  Indeed, the Louisiana Supreme Court noted that "[t]o hold otherwise would permit [a] defendant to gamble on getting the benefit of the lesser verdict (and *acquittal* of the offense charged) and then complain for the first time on appeal that the jury should not have been permitted to consider the unsupported responsive verdict." *Id.* at 251 fn. 11 (emphasis in original).

This is exactly what Simon attempts to do in this Court. Simon received the benefit of the Louisiana responsive verdict system by allowing the jury to consider the legislatively authorized lesser responsive verdict of manslaughter by failing to object to the court's jury charge, and he now complains that he should be acquitted, not only of the charged offense, but also of the "compromise" responsive verdict entered against him.  Indeed, had the manslaughter charge been stricken on motion of the state or by the state court on its own motion, it is probable that petitioner would now complain that he had been denied his right to have the jury return this legislatively authorized lesser responsive verdict. Furthermore, to accept petitioner's present argument, would, in effect, invalidate Louisiana's responsive verdict system, allowing only entry of a verdict which is a true lesser and included offense, in contradiction to the Louisiana legislature's judgment that manslaughter should constitute an offense of a lesser grade than second degree murder which the jury should be permitted to consider.

However, the Court need not consider petitioner's present argument that the *Elaire* rule is unconstitutional and in violation of the standard set forth by the United States Supreme Court in *In re Winship*, 397 U.S. 358 (1970) because that claim was never raised in the Louisiana state courts. Rather, in the Louisiana state courts, petitioner argued only that his manslaughter conviction could not stand because he acted in self defense and, alternatively, if his self defense claim was rejected, that he should have been convicted only of the lesser responsive verdict of negligent homicide.  *See* rec. docs. 1-17, pgs. 20-22 (counseled appellate brief filed in the Third Circuit); 1-18, pgs. 25-29 (*pro se* supplemental appellate brief filed in the Third Circuit); 1-15, pgs. 12-14 (Louisiana Supreme Court writ application). Issues not exhausted in the state court cannot be considered for the first time on federal *habeas review. Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) (holding that a petitioner's claims are procedurally defaulted on federal *habeas* review where the facts or legal theories relied upon are different in federal court than in state court); *Ogan v. Cockrell*, 297 F.3d 349, 358 (5th Cir. 2002) *citing Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) ("The exhaustion requirement is satisfied when the substance

charged offense.  This rule recognizes both the legitimacy of a "compromise" verdict and comports with the Louisiana responsive verdict scheme. *State v. Schrader*, 518 So.2d 1024, 1033-1034 (La. 1988) *citing  State ex rel Elaire v. Blackburn*, 424 So.2d 246, 251-252 (La. 1982).

Here, petitioner was charged with second degree murder.  He was found guilty of manslaughter, a proper responsive verdict.  The record reveals that petitioner did not object to the inclusion of manslaughter as a possible verdict.  Thus, although the elements of manslaughter may not have been established[9], petitioner's conviction may be upheld if the State established the elements of second degree murder such that the jury could have returned the "compromise" verdict rendered in this case.

In rejecting this claim on direct appeal, citing *Elaire*, the Louisiana Third Circuit Court of Appeal extensively analyzed the evidence presented at trial, and found that the evidence was sufficient to support a conviction for second degree murder under the

---

of the federal *habeas* claim has been fairly presented to the highest state court . . . .  A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement. . . . [and] is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application") and *Dispensa v. Lynaugh*, 847 F.2d 211, 217 (5th Cir. 1988) (stating that the Fifth Circuit "has consistently held that a federal *habeas* petitioner has failed to exhaust his state remedies when he relies on a different legal theory than he did in state court or when he makes the same legal claim to a federal court but supports the claim with factual allegations that he did not make to the state court").

[9]Manslaughter, like second degree murder, requires proof of specific intent.  However, in the offense of manslaughter, the offense is committed in "sudden passion" or "heat of blood" "caused by provocation sufficient to deprive an average person of his self-control and cool reflection."  *State v. Harris*, 812 So.2d 612, 618 (La. 2002); La. R.S. 14:31(A)(1).  The defendant must prove these mitigating factors as well as provocation.  *State v. Journet*, 629 So.2d 1387, 1390 (La. App. 3d Cir. 1993); *State v. Brooks*, 839 So.2d 1075, 1078 (La. App. 2nd Cir. 2003).

federal standard set forth by the United States Supreme Court in *Jackson v. Virginia* as

follows:

> . . . [T]he State was not required to prove Defendant committed manslaughter. In this case, manslaughter was a responsive verdict to the charge of second degree murder. La.Code Crim.P. art. 814(A)(3). A trier of fact may return any legislatively provided responsive verdict whether or not the evidence supports that verdict, as long as the evidence was sufficient to support a conviction of the charged offense. *State ex rel. Elaire v. Blackburn*, 424 So.2d 246, 249 (La. 1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983). The charged offense was second degree murder.

> Second degree murder, in pertinent part, is defined as "the killing of a human being: (1) When the offender has a specific intent to kill or inflict great bodily harm." La.R.S. 14:30.1(A). We find that Defendant's actions exhibited the specific intent to kill or inflict great bodily harm on the victim. The initial threat that Onezine allegedly made against Defendant was hours before the shooting, and testimony established that Defendant may well have been the aggressor. Defendant had the opportunity to leave the area but chose not to, armed himself, and set out to find the victim. By his own admission, he fired at the victim almost as soon as he saw him coming down the street. Witnesses reported that Defendant was exuberant afterwards, shouting out, "I got him, I got him." Defendant fled the scene immediately after the shooting, hardly appropriate actions for one who claims he meant only to protect himself by shooting warning shots into the air, then aiming for the victim's legs.

> Based on the foregoing, a rational trier of fact, after viewing the evidence in the light most favorable to the State, could have found that Defendant committed second degree murder beyond a reasonable doubt. Accordingly, the responsive verdict of manslaughter was a compromise and valid verdict. Thus, we find no merit to this assignment of error.

*Simon*, 2009 WL 4653743 at *6-7.

The Third Circuit likewise extensively analyzed the evidence and rejected

petitioner's claim that the State had not met its burden of proving that petitioner did not

act in self defense under the *Jackson v. Virginia* standard as follows:

> We first address Defendant's claims that there was insufficient evidence to sustain the verdict of manslaughter and that the State failed to prove Defendant's actions were not self-defense. Defendant was charged with second degree murder but convicted of the responsive verdict of manslaughter. Defendant argued at trial that he acted in self-defense. He argues that the State failed to meet its burden of proving that his actions were not self-defense. He contends that the victim was known for his violent tendencies. Because the victim had stabbed him in the past and had threatened him earlier in the day, Defendant argues that he reasonably believed that he was in imminent danger of losing his life or receiving great bodily harm; therefore, he claims that his actions were justified.
>
> Justifiable homicide is permitted "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La.R.S. 14:20. In the case of a homicide wherein the defendant claims self-defense, the State has the burden of proving that he did not act in self-defense. *State v. Hargrave*, 05–1027 (La.App. 3 Cir. 3/1/06), 926 So.2d 41, *writ denied*, 06–1233 (La.11/22/06), 942 So.2d 552. While reviewing the sufficiency of the evidence to support a conviction, we must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
>
> At trial, twelve witnesses, excluding police officers, experts, and Defendant, testified as to the events of September 22, 2007. All the events occurred around Frank Street, between Georgia and Simcoe Streets, in Veazey, Louisiana.
>
> The first witness to testify was Joshua McZeal, who was a co-defendant in the case. The gun used to shoot Onezine belonged to McZeal. After the shooting, McZeal disposed of the gun. The gun was never found. McZeal was originally charged as a principal in the case but pled guilty to accessory after the fact.
>
> McZeal testified that sometime in the morning on the day of the shooting, he met Defendant in the neighborhood. They visited around the

neighborhood, then in the afternoon, Defendant had his first encounter with the victim. Onezine and Defendant had words, and Defendant wanted to fight, but McZeal got between them. McZeal testified that at first Onezine did not have a knife, but then he pulled out a knife. McZeal stated that a friend of Onezine's, Emmanuel Anderson, got in between them and told Defendant that he would fight him instead. Onezine and Anderson then started to leave the area, but first Onezine dropped to his knees and told Defendant, "Like my mama's standing out here, I swear to god you can't walk the streets tonight."

McZeal testified that later in the evening, he, his wife, Anderson, and Defendant were standing around McZeal's car in front of his aunt's house on Frank Street, when Defendant asked McZeal if he could borrow his gun, which was in the car's seat compartment. McZeal told him no. He testified that Defendant was afraid that he was going to get jumped that night. A few minutes later, Defendant asked for something out of the car, and McZeal unlocked the car. Shortly thereafter, Defendant wandered away. Then they heard shots down the street. McZeal's gun was no longer in the car. He saw Defendant run back from down the street and toss something into the roadside ditch as he ran away. McZeal retrieved the gun and drove to Heymann Park where he threw the gun into the bayou.

McZeal testified that Defendant was not known as a troublemaker around the neighborhood but that Onezine was known as a troublemaker and always carried a weapon. He said that Defendant was scared of Onezine.

Several of the witnesses who lived in the neighborhood, or were visiting there, testified that they either witnessed or heard that Onezine had several confrontations the day of the shooting. Noelton Cross, Jorajure Woods, Deidre Prejean, Paris August, Trudy Lewis, Calvin Francis, Jr., and Emmanuel Anderson all testified that Onezine had up to four encounters with various people throughout the day, encounters which included jumping into his car to make a getaway, driving over a neighbor's mailbox, and hitting someone on the head with a hammer. There was also testimony that the police had been called on a few of these occasions.

Most of the above listed witnesses testified that although they did not see Defendant shoot the victim, they heard the shots and saw Defendant run away. August testified further that as Defendant ran past her, she heard him scream, "I got him. I got him. He fell like a bitch." Lewis also testified that

she heard Defendant yell as he was running away from the area that he "got Tee Mike."

Jocelyn Lawrence, Trent Mitchell, and Quentin Isadore were with the victim at some point as he walked down Frank Street, and they saw Defendant walking toward him with the gun. Lawrence testified that she and Onezine were going to the store to cash a counterfeit one hundred dollar bill so she could buy crack cocaine from him when they saw someone walking toward them. She stated that because she did not have on her glasses, she could not see who it was. She said that Onezine had a "big" knife. She stated that Onezine stopped to talk to Isadore, "Paw Paw," and she walked on ahead. She said that she heard shots and saw someone running away. She said that the shooter was standing approximately three houses away when he fired the gun.

Mitchell testified that he was with the victim earlier in the day and then met up with him again early evening. Onezine told him that he had an argument with Defendant that afternoon. Mitchell said that he was not sure if Onezine had a knife on him. As they were walking down Frank Street, Isadore rode up to them on his bike and stopped to talk. Mitchell testified that when the shots started, Onezine turned and attempted to run away but dropped immediately into the ditch. He said that Onezine had not been threatening Defendant and that the shots were fired from about three houses away. At trial, Mitchell initially stated that he was not sure that Defendant was the shooter, but he later admitted that in the statement he made to the police, he had said it was Defendant who was the shooter.

Isadore testified that he was riding his bike on Frank Street early in the evening when he saw both Defendant and Onezine. He stated that he rode past Defendant and stopped to talk to Onezine, who had been walking with a lady, when shots rang out. He did not see Onezine with a knife. Isadore admitted that when he spoke with the police, he told them that as he passed Defendant, he asked, "up's?," and Defendant said that he was going to kill Onezine. However, Isadore also admitted that he told the police that during the earlier confrontation between Defendant and Onezine, Onezine pulled out a knife and said to Defendant that "he was going to kill him later." While a majority of the witnesses above stated that they did not see the victim with a knife the day of the shooting, Jean Paul Broussard, one of the paramedics who attended to the victim, testified that he found a large knife when he rolled the victim onto the spine board.

21

Defendant testified that he and McZeal first encountered the victim while the victim was arguing with another person. Defendant said that he asked Onezine, "Why he was doing that?" Then Onezine started cursing him. Defendant testified that he and Onezine cursed each other, that he asked Onezine if he wanted to fight, and that Onezine said no. Onezine then left but came back with someone else who wanted to fight with Defendant. Defendant told the second person that he did not want to fight him. That was when Onezine told Defendant that he could not walk "the streets no more." Defendant stated that Onezine then left and went down to Georgia Street.

Defendant testified that he was scared. He said that Onezine had cut him in the past, but the police did not do anything about it because "the cut wasn't big enough." He said that in the early evening, while he was with McZeal in front of Anderson's house on Frank Street, he asked McZeal for the gun. Defendant said that he stayed for a while, then began walking down the street toward Georgia Street and saw the victim walking toward him on the other side of the street. When Onezine saw him, he pulled a knife. Defendant pulled the gun out, and Onezine began running toward him. Defendant testified that he shot into the air twice, but Onezine kept running toward him, so he lowered the gun and shot again. Defendant testified that when he lowered the gun, he was aiming for the victim's legs.

Defendant's statement, given the day after the shooting, was published to the jury. In the statement, Defendant told the police officer that Onezine began to run away from him after he started shooting. When asked whether Onezine was a threat then, since he was running away, Defendant answered, "Well he was a threat to me before I pulled out the gun 'cause he had the knife out in his hand and he was walking my way." Defendant told the police officer that Onezine was about twenty to thirty feet away when he began shooting.

To determine self-defense, a defendant's actions are subjected to a twofold inquiry:

1) whether, from the facts presented, the defendant could reasonably have believed his life to be in imminent danger, and 2) whether deadly force was necessary to prevent the danger. While there is no unqualified duty to retreat from an altercation, the possibility of escape is a recognized factor in determining whether or not a defendant had a reasonable belief that deadly

22

force was necessary to avoid the danger. *State v. Woodhead*, 03–1036 (La.App. 5 Cir. 1/27/04), 866 So.2d 995, 999–1000, *writ denied*, 04–0598 (La.7/2/04), 877 So.2d 144. Furthermore, LSA–R.S. 14:21 states that "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict."

*State v. Jackson*, 06–565, p. 5 (La. App. 5 Cir. 12/27/06), 948 So.2d 269, 272–73.

We find that the State met its burden of proving that Defendant did not act in self-defense when he purposefully armed himself with a gun and stayed in an area where he knew the victim would be. As noted above, the ability to retreat from such confrontation may be considered when determining whether Defendant had a reasonable belief that deadly force was necessary to avoid the danger. During cross-examination, Defendant admitted that later in the early evening, after the first encounter with the victim, he left Anderson's house and turned left to go toward Georgia Street instead of turning right to go home. Although Defendant testified that Onezine began running toward him after he pulled out the gun, his statement to the police was that Onezine attempted to run away. Furthermore, it was Defendant who wanted to fight during the first confrontation.

Two more factors to be considered when deciding whether a defendant's claim of self-defense is valid are the excitement and confusion of the situation and the defendant's knowledge of the assailant's bad character. *State v. Nelson*, 34,077 (La. App. 2 Cir. 12/6/00), 775 So.2d 579. While all the witnesses testified that Onezine was having a day full of conflicts, all three witnesses that were with Onezine at the time of the shooting testified that he, Mitchell, and Isadore were having a conversation and that Onezine was not threatening Defendant in any way. Moreover, two of the witnesses testified that the shooter was three houses away from Onezine when he began shooting. Two of the witnesses also testified that Onezine tried to get away. In order for Defendant's actions to be justified, the force used against Onezine must have been reasonable under the circumstances and apparently necessary to have prevented an imminent assault. *See State v. Salter*, 31,633 (La. App. 2 Cir. 2/24/99), 733 So.2d 58, *writ denied*, 99–990 (La.9/24/99), 747 So.2d 1114. Testimony established that Defendant was a fair distance (twenty to thirty feet, by his own admission) from the victim when he began shooting.

23

> While there was conflicting testimony as to whether the victim had a knife or was known to carry a weapon, when confronted by conflicting testimony, "the determination of that fact rests solely with the judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence." *State v. Mills*, 04–489, pp. 7–8 (La. App. 5 Cir. 3/29/05), 900 So.2d 953, 960, *writ denied*, 05–1470 (La.1/13/06), 920 So.2d 235. We find that based on the evidence, a rational trier of fact could have concluded that the State met its burden of proving beyond a reasonable doubt that Defendant was not acting in self-defense when he shot the victim.

*Simon*, 2009 WL 4653743 at *1-5.

Under the appropriate standard of review, this Court cannot find that the state court's decision was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the State court record.

The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) (emphasis added); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991) *quoting Jackson*, 443 U.S. at 319.  Thus, a federal court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypothesis consistent with the defendant's claim of innocence." *Gibson*, 947 F.2d at 783.  Stated differently, an applicant is entitled to *habeas corpus* relief only if it is found that "no rational trier of fact

24

could have found proof of guilt beyond a reasonable doubt." *Id. citing Jackson,* 443 U.S. at 324; *West v. Johnson,* 92 F.3d 1385, 1393 (5th Cir. 1996) *citing Jackson*, 443 U.S. at 322-26.

This Court applies the *Jackson* standard "giving great weight to the state court's determination." *Gibson*, 947 F.2d at 782, 786; *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987). Both direct and circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990) *citing Jackson*, 443 U.S. at 319, 324-25, 99 S.Ct. at 2789, 2792; *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir. 1979) (*per curiam*). The fact that most of the evidence against a defendant was circumstantial does not change the standard of review. *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5th Cir. 1991) *citing United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989).

Contrary to petitioner's position, as correctly noted by the Louisiana Third Circuit Court of Appeal, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed.Appx. 442, 443 (5th Cir. 2004) *citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *Garcia*, 995 F.2d at 561 *citing United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992). *See also Green v. Johnson,* 160 F.3d 1029, 1047 (5th Cir. 1998) *citing Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.").

Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) *citing United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999).  Accordingly, "whether judges doubt the credibility of a witness . . . is beside the point . . . ." *Greenwood*, 974 F.2d at 1458.  The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

Under Louisiana law, second degree murder is (1) the killing of a human being when the defendant had a specific intent to kill or to inflict great bodily harm, or (2) the killing of a human being when the defendant is engaged in certain enumerated crimes which crimes include aggravated burglary.  La. R.S. 14:30.1.  Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. La.R.S. 14:10(1); *State v. Brooks*, 839 So.2d 1075, 1079 (La. App. 2d Cir. 2003) *citing State v. Lindsey*, 543 So.2d 886 (La. 1989).  Intent can be inferred from the circumstances. *State v. Harris*, 812 So.2d 612, 618 (La. 2002). Pointing a gun at the victim and firing the gun has been found to be sufficient evidence to infer specific intent to kill or do great bodily harm. *Brooks*, 839 So.2d at 1079 *citing State v. Procell*, 365 So.2d 484 (La. 1978).  Moreover, the discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. *Id. citing State v. Maxey*, 527 So.2d 551 (La. App. 3d Cir. 1988).

A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and the killing is necessary to save himself from that danger.   La.R.S. 14:20(A)(1).  However, "a person who is the aggressor or who brings on a difficulty" cannot claim the right of self-defense.  *State v. Scales,* 655 So.2d 1326, 1336 (La. 1995) *citing* La.R.S. 14:21.  When self-defense is raised by a defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense.  *Scales,* 655 So.2d at 1336; *State v. Taylor,* 875 So.2d 58, 63 (La. 2004).

As found by the Third Circuit, the evidence presented in this case was sufficient to support any rational juror's finding that petitioner committed second degree murder and did not act in self defense.  Accordingly, petitioner's manslaughter conviction must stand.

There was more than sufficient evidence for a reasonable juror to find that petitioner was the aggressor, who purposefully sought out Onezine, pointed his gun at Onezine and shot him.  McZeal testified that after the initial confrontation between petitioner and Onezine, petitioner armed himself with a gun he took, without permission, from McZeal's car.[10]  Then, on cross examination, petitioner admitted that rather than turning right from his friend's house to go to his home, he turned left to go toward the area where Onezine could be found.[11]

---

[10]rec. doc. 20-2, pg. 249, 252, 269.

[11]rec. doc. 20-3, pg. 193-194.

27

Petitioner testified in support of his claim of self-defense that he was afraid of Onezine based on prior threats and past incidents, and that Onezine was armed with a knife when the shooting occurred.[12]  Petitioner admitted, however, in his statement to Detective Estorge that Onezine was twenty to thirty feet away from him when he began shooting.[13]

Moreover, eyewitness testimony refuted petitioner's self defense claim.  Two of the eyewitnesses, Lawrence and Mitchell, testified that the shots were fired when Onezine was three houses away from the shooter[14], and both Mitchell and Lawrence testified, consistent with petitioner's statement to police the day of the shooting, that Onezine attempted to run away.[15]

This is consistent with the testimony of the coroner, Dr. Joel Carney, who testified that there was an absence of gun shot residue on Onezine indicating that the shot was fired form several feet away and that the bullet entered the right side of Onezine's face by his cheek and traveled through his neck striking the left carotid artery before exiting by Onezine's left ear.[16]  Thus, the trajectory of the bullet was side to side, not front to back.

---

[12]rec. doc. 20-3, pgs. 173, 177, 190, 175-176.

[13]rec. doc. 20-2, pgs. 227.

[14]rec. doc. 20-3, pgs. 22, 55, 64-65.

[15]rec. doc. 20-3, pgs. 22, 32, 47-48, 76-78, 85.

[16]rec. doc. 20-3, pgs. 130, 133.

Moreover, three witnesses, Paris August, Trudy Lewis and Calvin Francis, Jr., testified that immediately after the shooting, petitioner was exuberantly shouting that he "got" Onezine and that Onezine "fell like a bitch".[17]  These actions are inconsistent with petitioner's claim of self-defense.

As he did in the Third Circuit on direct appeal, petitioner urges this Court to make credibility determinations and to weigh the evidence in his favor.  However, on a sufficiency of the evidence review, it is not the province of this court to make credibility determinations or to review the weight of the evidence accepted by the jury. *See Young, Garcia, Greenwood, Green* and *Jackson*, *supra*. The jury obviously rejected petitioner's claim of self-defense, crediting the above testimony of the eyewitnesses.  Although the jury could have rejected the eyewitness testimony and could have made contrary inferences from the evidence presented, the jury chose instead to credit the testimony of McZeal, Lawrence and Mitchell, which itwais entitled to do. Their testimony establishes that petitioner purposefully armed himself, went in the direction where Onezine could be found, pointed the gun at Onezine and fired when Onezine was a fair distance from him, while Onezine was attempting to run away.  This testimony is more than sufficient  for a reasonable juror to conclude that the shooting was not in self-defense and that petitioner had the requisite specific intent to kill.  *See Harris, Brooks, Procell* and *Maxey*, *supra*. Moreover, this Court cannot find the testimony accepted by the jury so incredible or insubstantial that, as a matter of law, it can be discounted.  Petitioner's complaints are

---

[17]rec. doc. 20-2, pg. 436, 456, 489.

therefore meritless.

In sum, any rational juror could have found sufficient evidence of the essential elements of second degree murder and that proof that petitioner acted in self defense was lacking.  The evidence satisfies the *Jackson v. Virginia* standard.  Although petitioner's guilt is based, in part, on circumstantial evidence and on the credibility of various witnesses, this alone is insufficient to supplant the jury's determination.  The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Green v. Johnson,* 160 F.3d 1029, 1047 (5th Cir. 1998) *citing  Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Therefore, as the Third Circuit found, this claim is without merit.

**Claim 5 – Denial of Petitioner's Motion to Suppress**

Petitioner contends that his custodial recorded confession given to Detective Judith Estorge was obtained in violation of his right to counsel.  More specifically, petitioner contends that he was questioned by Detective Estorge after he invoked his right to counsel, but that the detective failed to honor the invocation of his right by continuing to question him about the murder.  Moreover, petitioner contends that his confession was involuntary because the detective knew petitioner was scared, but failed to cease questioning and because the detective promised petitioner that he would receive less time if he confessed.

Prior to trial, petitioner filed a Motion to Suppress his confession. [rec. doc. 20-1, pg. 439-441, 444].  An evidentiary hearing on the Motion was held on September 16,

2008 prior to the beginning of trial, at which both petitioner and Detective Estorge testified. [rec. doc. 20-1, pg 495 through 20-2, pg. 45].  At the conclusion of the hearing, the Motion was denied.  In denying the Motion, the trial court held that the State "affirmatively established that the statements were given voluntarily, and not under duress or inducement, even considering the testimony of the defendant."  Moreover, noting that petitioner had been advised of his [*Miranda*] rights and had waived those rights, the trial court held that under *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350 (1994) "the circumstances must be unequivocal that the defendant wants to stop the interrogation and requests counsel.  And that didn't occur." [rec. doc. 20-2, pg. 44-45].

On direct appeal, the Louisiana Third Circuit Court of Appeal held that petitioner did not clearly, directly and unequivocally invoke his right to counsel, and that the trial court therefore did not err when it denied petitioner's Motion.  In so finding, the Louisiana Third Circuit relied upon Louisiana jurisprudence interpreting numerous United States Supreme Court decisions, including the Court's decision in *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350 (1994) wherein the Court held that invocation of the right to counsel must be unequivocal and unambiguous.  Thus, applying an objective inquiry, if the alleged invocation "is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, [Supreme Court] precedent does not require the cessation of questioning." *Davis*, 114 S.Ct. at 458.  In commenting on *Davis*, the Third Circuit

31

explained:

> The applicability of the "'rigid' prophylactic rule" of *Edwards* requires courts to "determine whether the accused **actually invoked** his right to counsel." *Davis v. United States*, 512 U.S. [452] at 458, 114 S.Ct. [2350] at 2355[, 129 L.Ed.2d 362 (1994) ] (emphasis in original) (citations omitted). To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. *Davis*, 512 U.S. at 458–459, 114 S.Ct. at 2355. Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis*, 512 U.S. at 459, 114 S.Ct. at 2355 (citation omitted). If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, the cessation of questioning is not required. *Id*. (emphasis in original). The suspect must articulate his desire to have counsel present with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Id.*

At the suppression hearing, Detective Estorge testified that Defendant was brought into the police department in the early morning. She stated that he was *Mirandized* and that he stated that he understood his rights. She testified that the usual procedure was to interview a suspect first then, if he was willing to speak, to initiate a taped interview. She stated that when she was discussing whether he would be willing to do a taped interview with Defendant, he said, "I mean, I got to get a lawyer appointed to me or something?" She said that she told him that it was up to him whether he wanted to speak with a lawyer first, and after she again advised him of his rights, she asked him if he was willing to speak with her. He responded "Well, I'm willing to tell you what I just told you."

The conversation between Defendant and the detective, recorded and transcribed, went as follows:

JE: And before we began this interview I read you this advise of right form?

MS: Yes Ma'am.

JE: and you signed here, that's your signature?

MS: Yes Ma'am.

JE: And you understand those right[s]?

MS: Yes Ma'am.

JE: And you're willing to talk to me?

MS: Well did I?

JE: I'm asking you. Are you still willing to talk to me?

MS: I mean will it do me any good?

JE: Well I'm giving you the opportunity so we can put it on tape for your side of the story. Are you willing to do that?

MS: Well (inaudible) . . . I mean I gotta get a lawyer appointed to me or something?

JE: That's up to you. If you wanna talk to me today that's what we're here for now.

MS: What are you?

JE: I'm a police officer.

MS: So you're not, what do you . . .

JE: The badge, when I walked in here and I told you what I was charging you with.

MS: Right. So . . .

JE: And that's why I read you your rights form. I told you I was Detective Estorge, Lafayette Police Department.

MS: Right.

JE: Correct?

MS: Yes I understand all that.

JE: All right. We went through what happened, but now I'm trying to put it on tape.

MS: Right.

JE: Right. You remember all that?

MS: Yes Ma'am.

JE: All right. Are you willing to talk to me?

MS: Well, I'm willing to tell you what I just told you.

JE: Okay, well that's what I'm asking you.

MS: Yes Ma'am.

JE: All right. And you know it's being taped?

MS: Yes Ma'am.


Defendant's one question, "Well (inaudible) . . . I mean I gotta get a lawyer appointed to me or something?" does not rise to the standard of being a direct, clear, unequivocal, and unambiguous request for counsel. . . .

*          *          *

Therefore, we find that the Defendant's statement was not a clear, direct, and unequivocal invocation of his right to counsel.  The trial court did not err when it denied Defendant's Motion to suppress.

*Simon*, 2009 WL 4653743 at *14-16 *citing State v. Payne*, 833 So.2d 927, 935 (La. 2002)

*quoting Davis*, 512 U.S. at 458-459.

The undersigned cannot find that the Third Circuit's decision is contrary to, or an unreasonable application of, federal law as determined by the United States Supreme Court.  The statement made by petitioner is analogous to that made by the defendant in *Davis*, wherein the Court found the statement "Maybe I should talk to a lawyer" was not an unequivocal invocation of the right to counsel.  Thus, under *Davis,* petitioner did not unequivocally or unambiguously invoke his right to counsel, nor would an objectively reasonable police officer in the circumstances understand petitioner's statements to have been tantamount to an invocation of his right to counsel.  *See also  Soffar v. Cockrell*, 300 F.3d 588, 595 (5th Cir. 2002) *quoting Davis*, 512 U.S. at 459, 114 S.Ct. at 235 (holding that procedural questions made during custodial interrogation (whether the suspect should get an attorney, how the suspect could get one and how long it would take to have an attorney appointed) were too equivocal to constitute a clear invocation of the right to counsel).

Furthermore, petitioner has not demonstrated that the state court's decision that petitioner's confession was voluntary and not the product of duress or inducement is based on an unreasonable determination of the facts in light of the evidence presented or contrary to, or an unreasonable application of, federal law as determined by the United States Supreme Court.  While Detective Estorge testified that she thought petitioner was scared[18],  the inquiry under *Davis* is an objective one, and Estorge's perception of

---

[18]rec. doc. 20-2, pg. 23.

petitioner's state of mind is irrelevant. *See Soffar,* 300 F.3d at 595, fn. 7 *citing Davis*, 512 U.S. at 459, 114 S.Ct. 2350.

Furthermore, virtually every suspect undergoing custodial interrogation is scared; the Supreme Court has never extended their prophylaxis rules to require the immediate cessation of questioning of scared suspects as such a rule would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity.

Likewise, although petitioner testified that he understood that Estorge was suggesting that if he confessed "it wasn't going to be that bad", that was merely his perception.[19]  Detective Estorge testified that she made no promises, much less any promise of leniency, to petitioner in return for his confession. The trial court chose to believe Detective Estorge, and petitioner presents no persuasive argument that the trial court's credibility determination was erroneous.  Moreover, even if the Detective had made any such suggestion, the Supreme Court has concluded that a non-threatening statement that cooperation is to the defendant's benefit does not render a statement involuntary. *Fare v. Michael C*., 442 U.S. 707, 727, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *see also United States v. Hooker,* 416 Fed.Appx. 467, 473 (5th Cir. 2011) *citing Fare, supra., United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir. 1996) (A promise to convey cooperation to a court or prosecutor is insufficient to render a statement involuntary) and *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978) (same);

---

[19]rec. doc. 20-2, pg. 29.

36

*United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1348 (5th Cir. 1994) (being told that there were advantages to cooperating doesn't render a confession involuntary).

For these reasons, *habeas* relief is not warranted on this claim.

**Claim 6 – Denial of Petitioner's Motion for Mistrial**

Petitioner contends that the trial court abused its discretion in failing to grant a mistrial when the State attempted to introduce evidence of prior bad acts. More specifically, petitioner argues that a mistrial should have been granted when the prosecutor asked the following questions of McZeal on redirect:

Q. Now, Mr. Register asked if you knew about his [Simon's] being in the National guard.

A. Yes, sir.

Q. You knew he was in the National Guard?

A. Yes, sir.

Q. Did you know he was AWOL from the National Guard?

A. He was what?

Q. He was AWOL, absent without leave.

A. Not to my knowledge.

Q. Not to your knowledge, okay. Did you know that he had be[sic] cited for threatening a superior officer?

Defense counsel objected, and the objection was sustained by the trial court. The trial court then directed the jury to ignore the last question asked by the prosecutor. [rec.

doc. 20-2, pg. 280-281].  The jury was then removed from the courtroom.  The State

argued that the question was permissible since on cross-examination defense counsel

asked the witness about Defendant's service in the National Guard, thereby "opening the

door" to specific questions about Simon's military service. [*Id.* at pg. 281-282].

The trial court explained his ruling sustaining the objection as follows:

This is not the particular witness; that's the objection. He could not know
the answer to that question. And I sustained the objection. He could not
know the answer to that question.  And I sustained the objection; it's to be
stricken. This is not the proper witness. How can this witness know the
answer to the question that you asked. You asked a question just so a jury
would hear the question.  [*Id.* at pg. 282].

Defendant then asked for a mistrial, arguing that the prosecutor had intentionally

asked the question to allow the jury to hear about prior "bad acts" and that the jury had

been prejudiced.   The prosecutor responded arguing that defense counsel had brought up

Simon's prior National Guard duty, which the witness testified he was aware of, and that

he was merely delving into the witness's knowledge of specific instances associated with

that duty.  The prosecutor did not know the what the answer to the question would be, but

that the witness could have said "Yes, I knew that.  He told that to me." [*Id.* at pg. 283-

284].

The trial court denied the motion for a mistrial.  The court then again instructed the

jury to disregard the question. [*Id.* at pg. 283-284].

The Louisiana Third Circuit Court of Appeal analyzed the claim as follows:

Louisiana Code of Evidence Article 404(B) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

Moreover, La.Code Crim.P. art. 770 provides, in pertinent part:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

                    *          *          *

(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.

Defendant argues, in brief, that the admonishment to the jury did not sufficiently alleviate the alleged prejudice caused to his case by the questions.

Evidence of criminal offenses other than the offense being tried is generally inadmissible as substantive evidence, because of the substantial risk of prejudice to the defendant. *State v. Hills*, 99–1750 (La.5/16/00), 761 So.2d 516, 520–21. This avoids the unfair inference that a defendant committed the crime charged simply because he is a person of bad character. *Id.*

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the . . . district attorney, or a court official, during the trial or in argument, refers directly or indirectly to . . . [a]nother crime . . . alleged to have been committed by the defendant as to which evidence is not admissible[.]" LSA–C.Cr.P. art. 770(2). *See State v. Anderson,* 02–273, p. 5 (La.App. 5 Cir. 7/30/02), 824 So.2d 517, 521, *writ denied*, 02–2519 (La.6/27/03), 847 So.2d 1254.

                    *          *          *

A mistrial is a drastic remedy. *State v. Black*, 03–911, p. 7 (La.App. 5 Cir. 12/30/03), 864 So.2d 836, 841. It is only warranted under LSA–C.Cr.P. art. 770 when a remark or comment referencing the defendant's commission of

other crimes results in prejudice to the defendant's substantial rights sufficient to undermine the fairness of the trial. *Id*.; LSA–C.Cr.P. art. 771. An exception to LSA–C.Cr.P. art. 770's rule requiring a mistrial is made if the evidence is substantially relevant to some purpose other than to show that the defendant is a bad person and, therefore, more likely to have committed the crime. *State v. Black*, 03–911 at 8, 864 So.2d at 841. The trial judge must balance the pertinent factors to determine whether the probative value of the evidence is outweighed by its prejudicial effect. *Id*. The determination of prejudice and the ruling on a mistrial is within the sound discretion of the trial court. *State v. Black*, 03–911 at 8, 864 So.2d at 841. This Court has found that LSA–C.Cr.P. art. 770 is not applicable unless the inference clearly constitutes a comment on other crimes committed or alleged to have been committed by the defendant. *State v. Sprinkle,* 01–137, p. 21 (La.App. 5 Cir. 10/17/01), 801 So.2d 1131, 1144, *writ denied*, 01–3062 (La.10/25/02), 827 So.2d 1174, and *cert. denied*, 537 U.S. 1235, 123 S.Ct. 1358, 155 L.Ed.2d 200 (2003).

*      *      *

The introduction of inadmissible other crimes evidence is subject to a harmless error analysis. *State v. LaGarde*, 07–288, p. 9 (La.App. 5 Cir. 10/30/07), 970 So.2d 1111, 1123. "An error is harmless when the verdict is 'surely unattributable to the error.'" *Id*. On appeal, an improper reference to other crimes evidence is subject to the harmless error rule, i.e., whether the verdict actually rendered in the case was surely unattributable to the error. *State v. Nelson*, 02–65, p. 11 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 804, writ denied, 02–2090 (La.2/21/03), 837 So.2d 627.

*State v. Jones*, 08–20, pp. 11–14 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 243–44.

Even assuming that the questions inferring bad acts were improper, we find no reason to overturn the guilty verdict. Defendant was charged with second degree murder. As discussed above, the evidence was sufficient for the trier of fact to have concluded that Defendant was guilty of the offense of intentionally seeking to kill or inflict great bodily harm on the victim. However, the jury chose to convict Defendant of the compromise verdict of manslaughter, a lesser included offense. It cannot be said that the questions of whether the witness knew if Defendant had been AWOL from the National Guard or that he was cited for insubordination substantially

40

affected the outcome of the trial. The witness, who purportedly was a good friend of Defendant, answered, "not to my knowledge." The error, if any, was harmless. Therefore, there is no merit to this assignment of error.

*Simon*, 2009 WL 4653743, at *7-8.

In order to obtain federal *habeas corpus* relief on grounds of trial error, the petitioner must show more than prejudice to his substantial rights. *Kirkpatrick v. Blackburn,* 777 F.2d 272, 279 (5th Cir.1985).  The petitioner must establish that the trial error was not merely an abuse of discretion, but also was so grave as to amount to denial of his constitutional right to due process, that is, that the error rendered the trial fundamentally unfair. *Id.* A trial is fundamentally unfair only when there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Id.* For the reasons which follow, in this case, petitioner has not established that the denial of his motions for a mistrial constituted an abuse of discretion, or that the denial made his trial fundamentally.

Under Louisiana law, a mistrial is a drastic remedy which is warranted under Louisiana Code Criminal Procedure article 770 only when a remark or comment referencing an accused's commission of other crimes results in prejudice to his substantial rights sufficient to undermine the fairness of trial.  *State v. Broaden*,  780 So.2d 349, 360 fn. 5  (La. 2001), *cert. denied*, 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001). Assessing prejudice and deciding whether to grant or deny a mistrial lies in the sound discretion of the trial court. *Id. citing State v. Connolly*, 700 So.2d 810, 824 (La. 1997).

41

Even though article 770(2) is couched in mandatory terms, the admission of other crimes evidence is subject to harmless error analysis. *Id. citing State v. Johnson*, 664 So.2d 94, 101–02 (La.1995).

On direct appeal the Third Circuit found that although petitioner was convicted of the lesser included offense of manslaughter, there was sufficient evidence of petitioner's guilt to convict him of second degree murder.  Therefore, the prosecutor's questions did not substantially affect the outcome of the trial, and that the error, if any, was harmless. *Simon,* 2009 WL 4653743 at *8.

From the above, it is clear that the trial court acted within its discretion when it denied petitioner's motion for a mistrial.  Furthermore, the denial of the motion did not render petitioner's trial so fundamentally unfair so as to violate petitioner's due process rights.  Petitioner has not established sufficient prejudice amounting to a denial of fundamental fairness.  As was noted by the Third Circuit, this is particularly the case in light of the overwhelming evidence of petitioner's guilt of second degree murder, the charged offense, discussed in detail above.  Moreover, the trial court twice admonished the jury to disregard the prosecutor's question.  Under the circumstances, the undersigned is unable to say that petitioner has demonstrated that there was a reasonable probability that absent the prosecutor's singular, allegedly improper question, to a single witness, followed by an objection and two curative admonitions, the jury would have reached a different verdict. *See also Greer,* 483 U.S. at 766-767 (finding that a prosecutor's single

42

improper question followed by an objection and a curative instruction did not deny the defendant due process given the sufficiency of properly admitted evidence proving the defendant's guilt).  Therefore this claim has no merit and federal *habeas* relief is not warranted.

**Claim 7 – Excessiveness of Sentence**

Petitioner argues that his thirty year sentence for manslaughter is constitutionally excessive. Specifically, petitioner argues that while his sentence falls below the statutory maximum of forty years imprisonment[20], his sentence is nevertheless excessive because the court imposed a sentence toward the higher end of the statutory penalty range.

In rejecting this claim on direct appeal, noting that a sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense, the Third Circuit found that the trial court "did not abuse its vast discretion when it sentenced Defendant to three-fourths of the potential sentence."  *Simon*, 2009 WL 4653743, at *11-13.   In so finding the court noted that the facts supported a second degree murder conviction which carries a life sentence, but the jury exercised its prerogative to find petitioner guilty of the responsive verdict of manslaughter, that sentences imposed under similar circumstances have been upheld.  *Id.*

---

[20]*See* La.R.S. 14:31 which proscribes a penalty of not more than 40 years imprisonment for manslaughter.

Under the appropriate standard of review, this court must defer to the state court's determination, which is entirely correct under the applicable federal law.

Generally, the Eighth Amendment protects against not only barbaric punishments, but also those that are grossly disproportionate to the crime committed.  *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Ewing v. California*, 538 U.S. 11, 20-24 (2003); *Lockyer*, 538 U.S. at 72.  However, "[for] crimes concededly classified and classifiable as felonies, . . . the length of the sentence actually imposed is purely a matter of legislative prerogative." *Harmelin v. Michigan,* 501 U.S. 957, 962, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) *quoting Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

A federal *habeas* court will not upset a state sentence within statutory limits unless it is so disproportionate to the offense as to be completely arbitrary and shocking.  *Bonner v. Henderson,* 517 F.2d 135, 136 (5th Cir. 1975).  In this way, a "[court] must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *United States v. Gonzales,* 121 F.3d 928, 942 (5th Cir. 1997) *overruled in part on other grounds by United States v. O'Brien*, 130 S.Ct. 2169, 2180 (2010), *as stated in United States v. Johnson*, 398 F. App'x 964, 968 (5th Cir. 2010); *see also Ewing*, 538 U.S. at 24-25; *Doucet v. Terrell*, 2011 WL 4712103, *2 (W.D. La. 2011).

In light of *Solem's* general Constitutional principle and other relevant jurisprudence, the Fifth Circuit set forth its methodology for analyzing excessive sentence

claims in *McGruder v. Puckett,* 954 F.2d 313, 315 (5th Cir. 1992).  First, the court weighs the gravity of the offense against the severity of the sentence.  *McGruder*, 954 F.2d at 316.  Then, if the court determines that the sentence is grossly disproportionate to the offense, the court compares (2) sentences for similar crimes in the same jurisdiction and (3) sentences for the same crime in other jurisdictions.  Only if the court concludes in the first inquiry that the sentence is "grossly disproportionate" to the offense, does the court proceed to determine the second and third inquiries.  *Gonzales*, 121 F.3d at 942-943; *Doucet*, 2011 WL 4712103 at *3.  If the court concludes that the sentence is not "grossly disproportionate," the inquiry is finished, and the court "defer[s] to the will of Congress." *Gonzales*, 121 F.3d at 942-43; *Doucet*, 2011 WL 4712103 at *3.

Here, the issue of whether the sentence is unconstitutionally excessive turns on whether petitioner's punishment arrives at this threshold level of gross disproportionality.[21] The Supreme Court noted the inherent subjectivity in making this threshold determination in *Rummel,* 445 U.S. at 304.  Moreover, the Supreme Court has noted that outside the capitol punishment context, successful proportionality challenges are "exceedingly rare" and constitutional violations are therefore reserved only for an

---

[21]When imposing petitioner's sentence, noting that the use of a firearm in committing the offense constituted an aggravating circumstance and that petitioner had a felony conviction for an offense which pre-dated Onezine's murder, the trial court found as follows:

Also, the Court is also considering that this is a responsive verdict in that there - - I think there was sufficient evidence to convict you of murder in this case.

I think it's obvious that the jury rejected your claim of self-defense.  But I think there is some indication that it could be a compromise verdict.

. . .

So the only mitigating circumstances would be your potential for doing good in this matter and your age. Nevertheless, the aggravating circumstances are such that the Court will determine your sentence based on the offense and the aggravating circumstances. [rec. doc. 20-3, pg. 280-281].

45

"extreme" "extraordinary case."  *Ewing*, 538 U.S. at 21; *Lockye*r, 538 U.S. at 73 and 77.

In *Rummel,* the Supreme Court upheld a life sentence under a recidivist statute for a petitioner who had fraudulently used a credit card, passed a forged check, and finally, obtained $120.75 under false pretenses.  Subsequent jurisprudence in this Circuit has used *Rummel* as a benchmark for distinguishing constitutional sentences and grossly disproportionate punishments. *Gonzales,* 121 F.3d at 943; *Doucet*, 2011 WL 4712103 at *3.

Measured against the *Rummel* benchmark, petitioner's thirty year sentence for Manslaughter, which is within the statutorily prescribed limit, is plainly constitutional.  First, the gravity of the offense committed by petitioner is clearly more severe than the crimes of fraud and forgery punished by life imprisonment in *Rummel*.  Second, unlike the crimes at issue in *Rummel*, the crime committed by petitioner which resulted in the death of Michael Onezine, was extremely violent, petitioner shot Onezine in the head, in front of numerous eyewitnesses, and therefore warrants severe punishment.  The trial judge did not impose the maximum sentence that could have been imposed – forty years.

Accordingly, applying the benchmark test set forth in *Rummel,* the undersigned finds that the facts of this case do not meet threshold level of gross disproportionality; therefore, the sentences are consistent with the constitutional requirements of the Eighth Amendment.  Thus, petitioner's claim is without merit.[22]

---

[22]Petitioner makes a passing reference to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004). However, the Constitutional principles set forth in *Blakely* and its predecessor *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) are inapplicable to sentences within

## CONCLUSION

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it

---

the statutory punishment range. *See United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000) (affirming sentence because it was not greater than statutory maximum for crimes charged to jury and proved beyond a reasonable doubt).

enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.

**Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed at Lafayette, Louisiana, November 13, 2014.


C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE